UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| THOMAS W. HARRISON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. V-09-75 |
| § | |
| FORMOSA PLASTICS CORPORATION § | |
| TEXAS, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Formosa Plastics Corporation Texas' ("Formosa") Motion for Summary Judgment (Dkt. No. 16), to which Plaintiff Thomas W. Harrison ("Harrison") has responded (Dkt. No. 17), Formosa has replied (Dkt. No. 21), and Harrison has surreplied (Dkt. No. 23). Having considered the motion, responses, record, and applicable law, the Court is of the opinion that Formosa's motion should be **GRANTED**.

**I. Factual and Procedural Background**

Harrison began working as a process operator at Formosa's Polyethylene 2 (PE II) Unit in Point Comfort, Texas in December 1999. (Harrison Dep., Dkt. No. 16, Ex. 1 at 36:24 – 37:15.) Harrison was fifty-one years old when he was hired. (*Id*. at 38:21-23.) From nearly the beginning of his employment, Harrison and his co-workers, including Jeff Downs, Billy Echols, Charles Bethany, Moses Davila, and Ricky Pfuhl, would chide each other, and they often exchanged greetings "hey, old man," "hey, old fart," "hey, young'in," "hey, baby duck," "hey, young man," "whippersnappers," "young punks," or "hey, young blood." (Downs Dep., Dkt. No. 16, Ex. 5 at 36:21-24; Bethany Dep., *Id.*, Ex. 7 at 28:1-8, 40:22-25; Davila Dep., *Id.*, Ex. 8 at 22:19–23:2; Pfuhl Dep., *Id.*, Ex. 9 at 26:4-17, 28:17—29:4.) Harrison also requested that his coworkers call

1

him "Pa Pa," and he even had the name on his hardhat. (Downs Dep. at 37:7-11;; Bethany Dep. at 28:7-8; Davila Dep. at 23:6-7; Pfuhl Dep. at 39:18-25.)

Harrison maintains that his co-workers' age-related comments were more than good-natured banter, and the combination of discriminatory remarks and profanity upset him. (Harrison Dep. at 96:8-11.) For example, Harrison considered comments like "fat old bastard" and "old son of a bitch" demeaning. (*Id.* at 90:13-15, 96:8-11.) Although Harrison complained about the comments to "some of his confidants" (Davila Dep., Dkt. No. 17, Ex. D, at 16:10-20; Henderson Dep., *Id.*, Ex. E at 12:2—13:2), Harrison never told the offending co-workers that the comments were offensive or that he wanted them to stop. (Downs Dep. at 29:4-7; Echols Dep. at 44:13-21; Bethany Dep. at 41:23—42:7; Pfuhl Dep. at 36:24—37:14.) Instead, Harrison says he chose to live with the comments and accept being called "Pa Pa" because he was happy to have a job. (Harrison Dep. at 92:5-7, 94:22—95:1.)

In October 2006, Harrison received a Written Warning for failing to follow Formosa's Standard Operating Procedures when loading additives to the company's product. (Dkt. No. 16, Ex. 13.) Several months later, in February 2007, Harrison received a Final Written Warning after he falsified chain-of-custody forms for product samples he previously pulled. (*Id.*, Ex. 14.) In light of this disciplinary action, Harrison understood that any further disciplinary issues could subject him to termination. (Harrison Dep. at 80:7-11.)

Around the same time Harrison received his February 2007 Written Warning, Crenshaw became Harrison's shift supervisor.[1] (Crenshaw Dep. at 46:8-10.) According to Harrison, the comments became more derogatory and more frequent at that time. (Harrison Dep. at 90:10-12.) As a result, in late June or early July 2007, Harrison approached Crenshaw to complain about his

---

1. Formosa rotates shift supervisors and/or operators to one of four different shifts (A, B, C, and D shifts) in the PE II Unit on an annual or biannual basis to balance the work experience level of all shifts.

coworkers' weight and age-related comments. (Harrison Dep. at 118:1-12.) According to Harrison, Crenshaw stated there was nothing anyone could or would do about the comments, and instead of stopping the comments, Crenshaw started making similar comments himself. (*Id.* at 118:13-17, 123:5-12.) Harrison claims that he complained to Crenshaw a second time in August 2007 and threatened to report Crenshaw's failure to act on his complaints to Formosa's Human Resources Department ("Human Resources"). (*Id.* at 124:9-24.)

Roughly two weeks later, on Saturday, August 25, 2007, Harrison reported to work for the night shift (6:00P.M. to 6:00A.M.). (Harrison Dep at 319:2-3.) Upon learning that the employee scheduled to load rail cars had called in sick, Crenshaw selected Harrison to replace the loader because Harrison had prior loading experience and was capable of performing the "total job scope." (Crenshaw Dep. at 82"3-25.) When Crenshaw told Harrison he would need to load rail cars, Harrison responded, "No, I can't do that" or "I'm not going to load the cars." (Harrison Dep. at 141:20-24; Crenshaw Dep. at 83:2-3.) Crenshaw then repeated the instruction: "I need you to load rail cars." (Harrison Dep. at 141:25—142:2; Crenshaw Dep. at 83:16-19.) Harrison once again responded, "No, I can't do that. I cannot safely do that." (Harrison Dep. at 142:2-6.) Harrison claims Crenshaw then told him: "If you can't do the job I need you to do, if you're too sick to do that job, you need to go home." (*Id*. at 142:11-14.) Harrison then filled out his Notice of Absence form (NOA), left it on Crenshaw's desk, and went home. (*Id*. at 143:2-10.) Crenshaw denies telling Harrison to go home if he was sick, but instead recalls Harrison telling him "I'm sick. I'm going home." (Crenshaw Dep. at 84:23—85:3.) According to Crenshaw, while he was attempting to find another person to handle the rail car loading assignment, Harrison simply filled out an NOA and left without permission. (*Id.* at 85:4-14.)

Later that evening, Crenshaw reported Harrison's refusal to work as directed to his manager, S.C. Chang. (*Id.* at 86:10—87:10.) In doing so, he completed a Warning Notice outlining what had happened:

> Insubordination, due to a manpower shortage [Harrison] was instructed to start loading rail cars on Saturday night. He immediately said no, he was not going to load rail cars. I instructed him again that he needed to go and start loading rail cars. At this time he said he was sick and was going home. He proceeded to the file cabinet and pulled and filled his NOA out and left.

(Dkt. No. 16, Ex. 15.) Crenshaw believed he could take no further action because his authority to discipline employees was limited simply to reporting employee misconduct to his supervisor. (Crenshaw Dep. at 8:15 – 9:10, 23:3-15.) Additionally, because it was the weekend, neither Chang nor anyone in Human Resources would be in the office until the following Monday. (*Id.*) Harrison reported to work the next day without incident. (Harrison Dep. at 149:7-10.) Crenshaw once again assigned Harrison to load rail cars, and Harrison accepted the assignment and performed his job duties. (*Id.* at 152:18-20.)

On Monday, August 27, 2007, Formosa's Human Resources Specialist Bill Laas received Crenshaw's Warning Notice describing the events of August 25. (Laas Decl., Dkt. No. 16, Ex. 16 ¶ 5.) When Laas contacted Crenshaw to find out more, Crenshaw relayed the events of the evening. (*Id.* ¶ 6.) Crenshaw was neither asked nor did he recommend that any disciplinary action be taken against Harrison. (*Id.*; Crenshaw Dep. at 8:22—9:3.) Based on the information provided by Crenshaw, Laas determined, consistent with Formosa's disciplinary policy, that Harrison should be suspended pending an investigation to terminate for insubordination. (Laas Decl. ¶ 7; Drastata Decl., Dkt. No. 16, Ex. 17, ¶ 5.)[2]

---

2. It was also determined Harrison's NOA needed to be revised to reflect more accurately the time he left the facility on August 25. (Laas Decl. ¶ 8.) Laas instructed Chang to have Crenshaw obtain Harrison's signature on the revised NOA when he arrived at work and then pull Harrison's badge and escort him from the premises. (*Id.* ¶ 9.) Upon Harrison's arrival to work on August 27, Crenshaw and another supervisor met with Harrison to carry out

In conjunction with Harrison's suspension, Laas began investigating the allegations against Harrison to determine what disciplinary action, if any, was warranted. (Laas Decl. ¶¶ 2, 8.) In addition to obtaining Crenshaw's statement on August 28, Laas interviewed Harrison to obtain his version of the events. (*Id*. ¶¶ 10—11.) Harrison recounted the events of August 25, including his recollection that Crenshaw told him to go home if he was sick. (*Id.* ¶ 11.) Harrison also told Laas that Crenshaw and his other co-workers had been making jokes about his weight and age, and that he believed Crenshaw may have been retaliating against him for complaining about the comments. (Laas Decl. ¶ 11.) This was the first time Harrison ever complained to anyone in Human Resources about the alleged discriminatory comments, despite being aware of Formosa's policies for reporting complaints. (Harrison Dep. at 106:5-11, 171:11-18.) Laas ended the interview by assuring Harrison he would continue to investigate what happened on August 25 and would also look into the jokes regarding Harrison's age and weight. (Laas Decl. ¶ 11.)

Over the course of the next week, Laas interviewed several employees, including five of the operators on Harrison's shift (Wehmeyer, Brown, Bethany, Echols, and Wood), as well as Crenshaw. (Laas Decl. ¶¶ 12—14.) In the end, none recalled hearing Crenshaw tell Harrison to go home if he was sick. (*Id.* ¶ 13.) Additionally, none of the employees believed Harrison had been unfairly treated or was the subject of any inappropriate jokes. (*Id.*) In fact, several of Harrison's co-workers told Laas that Harrison enjoyed the "age thing" and wanted to be called "Pa Pa." (*Id.*) Human Resources Director Darren Drastata reviewed Laas' findings and concluded Harrison had been insubordinate. (Drastata Decl. ¶ 6.) Drastata then discussed the investigation with PE II Manager S.C. Chang. (*Id.* ¶ 8.) Based upon Harrison's refusal to

---

the instructions from Human Resources. (Crenshaw Dep. at 107:20—108:1.) Crenshaw asked Harrison to sign the revised NOA, but Harrison refused because he believed it was not correct. (*Id*.; Harrison Dep. at 153:15 – 157:5) In response, Crenshaw simply noted Harrison's refusal. (*See* NOA Form, Dkt. No. 16, Ex. 19.) The Court finds that the exact time Harrison left Formosa's facilities, and the time reflected on the NOA, is not material to the Court's decision on summary judgment.

perform the assigned job task and his previous disciplinary record, Chang and Drastata agreed Harrison should be discharged. (*Id*.) Chang and Drastata then discussed the investigation findings and their recommendation with Director of Administration Frank Wang. (*Id.*) Wang also reviewed Laas' report and agreed with the termination recommendation. (*Id*.) The investigation findings and termination recommendation were then presented to General Manager Randy Smith. (*Id.*) After considering the facts provided to him, Smith approved Harrison's termination. (*Id.*)

Two months after his discharge, Harrison filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), claiming Formosa discriminated against him on the basis of his age and retaliated against him for complaining about the alleged discrimination. (Dkt. No. 16, Ex. 24.) Nearly two years later, the EEOC dismissed Harrison's charge of discrimination and issued a Notice of Right to Sue letter stating that the EEOC could not substantiate Harrison's allegations of age discrimination and retaliation. (*Id.*, Ex. 25.) On December 10, 2009, Harrison filed the instant lawsuit alleging he was harassed and discriminated against because of his age, and he was retaliated against after he complained about the harassment and discrimination. (Dkt. No. 1.) Formosa now moves for summary judgment on both of Harrison's claims.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence

6

of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718—19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323—25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

#### A. Age Discrimination

Under the Age Discrimination in Employment Act (ADEA), "[i]t shall be unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §

623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, — U.S. —, 129 S.Ct. 2343, 2351 (2009)).

The burden-shifting test announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to Harrison's discrimination claims under the ADEA. *See Moss*, 610 F.3d at 922. Under the *McDonnell Douglas* approach, the allocation of the burden of production and the order for presentation of proof is as follows: (1) the plaintiff must first establish a *prima facie* case of discrimination; (2) if the plaintiff meets his burden, then the burden of production shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for its actions; and (3) if the defendant produces a legitimate reason, then the presumption of discrimination vanishes, and the plaintiff must demonstrate a genuine issue of material fact that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142—43 (2000).

The Fifth Circuit has held that a *prima facie* case of age discrimination is established when evidence of the following is presented: (1) the plaintiff was discharged; (2) he was qualified for the position; (3) he was forty years or older at the time of discharge; and (4) he was either i) replaced by someone under forty, ii) replaced by someone younger, or iii) otherwise discharged because of his age. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). For purposes of this motion, Formosa does not dispute that Harrison has satisfied the first three elements of his *prima facie* case. Formosa admits that Harrison, age 59, was qualified as an operator and discharged from employment. Instead, Formosa contends that Harrison has

presented no competent summary judgment evidence that he was (1) replaced by someone under the age of forty, (2) replaced by someone younger, or (3) otherwise discharged because of his age.

### 1. Replaced by Someone Younger

Harrison claims that, "[c]ontrary to Formosa's argument, Harrison . . . has been replaced by a younger employee." (Dkt. No. 17 at 13—14.) In support of this assertion, Harrison offers his own affidavit in which he states, "I have been told by current Formosa employees that Formosa hired one (1) or more much younger employees to replace me and perform my former job duties." (Harrison Aff., Dkt. No. 17, Ex. I.) Formosa has objected to this evidence as hearsay. Harrison maintains that the statements by "current Formosa employees" are not hearsay, but are instead party admissions under Federal Rule of Evidence 801(d)(2)(D).

Rule 801(d)(2)(D) provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is not hearsay. FED. R. EVID. 801(d)(2)(D). The Rule further provides that "[t]he contents of the statement . . . are not alone sufficient to establish . . . the agency or employment relationship and scope thereof under subdivision (D)." FED. R. EVID. 801(d)(2). Here, Harrison does not identify the names or job titles of any of the "current Formosa employees" who allegedly made the statements in question. Harrison also fails to establish that these employees were authorized to speak on behalf of Formosa, or that the statements were otherwise made during the course of the speakers' employment. *See Kelly v. Labouisse*, 364 Fed. App'x 895, 896 (5th Cir. 2010) (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991) (holding that the inquiry regarding scope of employment was whether the speaker was

authorized to act for his principal concerning the matter about which he allegedly spoke) (parenthetical in *Kelly*)).

Accordingly, the Court finds that Harrison has failed to establish that the statements in question fall under the party admission exception to the hearsay rule. Formosa's objection is therefore sustained, and the "current Formosa employees'" alleged statements to Harrison that he "had been replaced by one (1) or more much younger workers" are inadmissible. Harrison has presented no other evidence that he was replaced by someone younger or under the age of 40.

**2. Otherwise Discharged Because of Age**

**a. Work Assignments**

Next, Harrison argues that his work assignments under Crenshaw's supervision give rise to the inference of age discrimination. Specifically, Harrison claims he was discriminatorily segregated into one work area and was assigned to more physical jobs usually reserved for new employees. As evidence of this treatment, Harrison cites the deposition testimony of his former supervisor, David Henderson. Formosa objects to Henderson's testimony as hearsay on the grounds that Henderson is merely repeating things Harrison or other non-management co-coworkers allegedly told him. Harrison contends that Henderson's testimony is not hearsay, but instead is "clearly based on [Henderson's] observations of Harrison's assignments." (Dkt. No. 23 ¶ 5.)

During his deposition, Henderson testified that he did not work on A-shift with Harrison during the last year of Harrison's employment, but the two men would converse over coffee at shift change. (Henderson Dep., Dkt. No. 17, Ex. E at 10:6-15.) With respect to Harrison's assignments and treatment under Crenshaw's supervision, Henderson admitted that "a lot of what I heard was secondhand; I wasn't there." (*Id.* at 14:13-14.) When questioned regarding

where he had heard certain information, Henderson could not remember if it was from Harrison or another employee, and he stated that working in a plant is like a soap opera because "you hear everything that goes on in the other shifts. . . Anything that happens that causes conflict from one shift to another shift gets repeated several times, and it's never told the same way twice." (*Id.* at 17:11-20.)

Accordingly, the Court finds that although Henderson has personal knowledge concerning Harrison's assignments while Harrison worked on Henderson's shift, Henderson's testimony concerning anything that occurred on Crenshaw's shift is hearsay. Formosa's objection is therefore sustained. Henderson's deposition testimony as it pertains to Harrison's assignments and treatment on A-shift is inadmissible.

### b. Ageist Remarks

Harrison states that even if he accepted being called "Papa" and "old man," "a jury can certainly infer discriminatory animus from the profanity laced terms 'old bastard' and 'old son of a bitch'" that Crenshaw, Echols, Bethany, Pfuhl, and Downs allegedly called Harrison. (Dkt. No. 17 ¶ 48.) These comments, Harrison contends, are sufficient to establish a *prima facie* case of age discrimination.

"'In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010) (quoting *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)). "'Remarks may serve as sufficient evidence of age discrimination if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at

11

issue, and 4) related to the employment decision at issue.'" *Id*. (quoting *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 683 (5th Cir. 2001)). Comments that do not meet all four criteria are considered "stray remarks," and, standing alone, are insufficient to defeat summary judgment. *Jackson*, 602 F.3d at 380.

There is no doubt that comments like "old man," "old fart," "old son of a bitch," and "fat old bastard" are age related. Harrison has also presented evidence that the comments were made during the months leading up to and including the month he was terminated. (Harrison Dep. at 87:14-17.) However, Formosa has set forth evidence that the decision to discharge Harrison was made by Smith, Drastata, Chang, and Wang (Drastata Decl. ¶¶ 6, 8), and Harrison has not set forth evidence that Crenshaw, Echols, Bethany, Pfuhl, or Downs had authority over upper management's decision to terminate his employment. Thus, the Court finds that the alleged ageist comments were "stray remarks," and Harrison cannot rely on these comments to establish his *prima facie* case of age discrimination. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("To be probative, allegedly discriminatory statements must be made by the relevant decision maker."); *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999) ("Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment.").

### c. Cat's Paw

Because Harrison has not alleged any discriminatory animus on the part of Smith, Drastata, Chang, or Wang, his age discrimination claim can survive summary judgment only if he can create an issue of material fact as to whether Smith, Drastata, Chang, and Wang were a

"cat's paw"[3] for the alleged discriminatory animus of Crenshaw, Echols, Bethany, Pfuhl, and Downs. "To invoke the cat's paw analysis, [a plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decision maker.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). Where the decisionmaker conducts an independent investigation rather than "rubber stamping" or relying solely on the recommendation of the purported discriminator, any link between the alleged discrimination and the adverse action is broken. *Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001).

Here, Formosa has presented evidence that Crenshaw's Written Warning reporting Harrison's alleged insubordination prompted Human Resources to conduct its own investigation into the events surrounding Harrison leaving work on August 25, 2007. (*See* Crenshaw Dep. at 23:17—24:15; Laas Decl. ¶¶ 5—9; Drastata Decl. ¶ 5.) After receiving Crenshaw's report, Laas interviewed Harrison, Crenshaw, and several other employees. (Laas Decl. ¶¶ 12—14.) Drastata reviewed Laas' findings and concluded Harrison had been insubordinate. (Drastata Decl. ¶ 6.) Drastata then discussed the investigation with Chang, who agreed Harrison should be discharged. (Drastata Decl. ¶ 8.) Chang and Drastata then discussed the investigation findings and their recommendation with Wang, who also reviewed Laas' report and agreed with the termination recommendation. (*Id.*) The investigation findings and termination recommendation were then presented to Smith, who ultimately approved Harrison's termination. (*Id.*)

Harrison nonetheless maintains that Formosa rubber stamped Laas' conclusions and ignored key facts supporting Harrison's version of events. Specifically, Harrison points out that

---

3. "A 'cat's paw' is defined by Merriam-Webster's Third New International Dictionary 354 (3rd ed.1969) as '[fr. the fable of the monkey that used a cat's paw to draw chestnuts from the fire]: one used by another as a tool: dupe.'" *Leach v. Baylor College of Medicine*, 2009 WL 385450, *29 n.4 (S.D. Tex. Feb. 17, 2009).

Brown, Wehmeyer, and Wood told Laas during their interviews that on the night in question, Harrison told them he was sick. (Laas Decl., Ex. C.) Harrison also notes that Wehmeyer and Echols reported to Laas that as Harrison was leaving work that night, Harrison told them that Crenshaw had told him to go home if he was sick. (*Id.*) Harrison further points out that when first questioned, Crenshaw could not remember whether or not he told Harrison to go home if he was sick. (*Id.*, Ex. D.) However, as Drastata concluded after speaking with Laas and reviewing his interview notes, "[N]o other employee heard Mr. Crenshaw give Mr. Harrison permission to go home . . . . Indeed, one employee, Mr. Bethany, corroborated Mr. Crenshaw's version of the events, wherein Mr. Harrison expressed his refusal to load and, only when pressed, indicated he was not feeling well." (Drastata Decl. ¶ 6.)

Harrison further argues that the following evidence shows that Crenshaw did in fact influence the termination decision: (1) Crenshaw falsely reported Harrison's alleged misconduct, so he "caused" Harrison's termination; (2) on one occasion, Harrison saw Crenshaw and Laas sitting at the same table at Schroeder Dance Hall with their wives, which Harrison claims is evidence that Crenshaw and Laas were friends outside of work; and (3) Crenshaw "bragged many times that he can get anybody's job." (Harrison Dep. at 124:25—125:2; 163:8—164:5.) The Court finds this "evidence" is insufficient to create a genuine issue of material fact as to whether Crenshaw had authority or influence over the decision to terminate Harrison's employment. First, even if Crenshaw's report regarding Harrison's misconduct was fabricated, Formosa did not rely solely on Crenshaw's version of facts, but instead conducted an independent investigation. Next, the fact that Harrison saw Crenshaw and Laas together outside the workplace on one occasion does not demonstrate that Crenshaw had any influence over the decision-making process. Moreover, even if Crenshaw had bragged before that he could "get

14

anybody's job," Formosa has presented evidence that Crenshaw completely lacked the authority to terminate employment (Crenshaw Dep. at 8:15-21; Laas Decl. ¶ 3; Drastata Decl. ¶ 3), and Harrison has presented no evidence that Crenshaw's claim to the contrary was actually true.

Citing *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996), Harrison claims that summary judgment is inappropriate on this issue because whether Crenshaw exerted influence over the decision to terminate Harrison's employment is a question of fact. In *Long*, the Fifth Circuit found that "[d]ifferent factual findings on this question could be supported by evidence in the summary judgment record" because plaintiffs' supervisors—who were also the purported discriminators—conducted the investigation into the plaintiffs' alleged misconduct and prepared written statements on behalf of other employees for the decisionmaker's review. *Long*, 88 F.3d at 307 n.8. The same supervisors also recommended that plaintiffs be terminated, and the ultimate decisionmaker's only stated reason for termination was that he had "made a decision to uphold the recommendation of [plaintiffs'] supervisor[s] to terminate their employment." *Id.*

Here, although Crenshaw, Echols, Bethany, Pfuhl, and Downs were interviewed, Harrison has failed to rebut Formosa's evidence that not one of these individuals recommended that Harrison be discharged or otherwise disciplined for his actions. (Crenshaw Dep. at 8:22—9:3; Laas Decl. ¶¶ 6, 17; Drastata Decl. ¶ 8.) Harrison has also failed to present evidence that Smith, Wang, Drastata, and Chang failed to reach their decision based on anything other than an independent analysis of the evidence gathered by Laas during his investigation. Without evidence that Crenshaw influenced the termination decision, Harrison's subjective belief that Crenshaw was involved is insufficient to create an issue of material fact on this point. *Roberson*, 373 F.3d at 654; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy

the nonmovant's burden in a motion for summary judgment.") Thus, unlike *Long*, different factual findings on this issue cannot be supported by evidence in the summary judgment record.

Finally, the Court notes that Harrison has offered no explanation as to why he believes that Smith—who was 64 years old and five years Harrison's senior when he made the ultimate decision to terminate Harrison's employment—would discriminate against Harrison on the basis of his age. Harrison has also failed to account for the fact that he admitted during his deposition that he did not believe he was discharged because of his age:

> Q: So you believe you lost your job was because Crenshaw was upset that you said you were going to HR?
> A: I think so.
> Q: Is that the only reason you believe that you lost your job?
> A: I can't figure out what else it could be.

(Harrison Dep. at 133:11-17.) If Harrison does not believe he was discharged because of his age, he cannot establish a *prima facie* case of age discrimination, much less survive summary judgment. Accordingly, the Court finds that Formosa is entitled to summary judgment on this claim.

### B. Retaliation

Besides alleging age discrimination, Harrison also claims he was retaliated against for telling Crenshaw that he was going to report the ageist comments his co-workers and Crenshaw were making to Human Resources.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). To establish his *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the

16

protected activity and the adverse employment action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008); *Roberson*, 373 F.3d at 655; *Long*, 88 F.3d at 304. "If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the defendant meets its burden of production, the plaintiff must present substantial and specific evidence supporting a finding that the defendant's reasons are pretextual, and that "but-for" his protected activities, he would not have been subject to the adverse action. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001). "While this ['but for'] portion of the analysis may seem identical to the 'causal link' step in the *prima facie* case, the burden here is more stringent." *Id.* (citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116—17 (5th Cir. 1983)). The plaintiff "must reveal 'a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment.'" *Id.* (quoting *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

Harrison has set forth evidence that in late June or early July 2007, he approached Crenshaw to complain about his coworkers' weight and age-related comments and to ask for Crenshaw's help with the "old man jokes and all that." (Harrison Dep. at 118:1-17.) According to Harrison's deposition testimony, instead of stopping the discriminatory comments, Crenshaw started making similar comments himself. (*Id.* at 118:13-17, 123:5-12.) Harrison complained to Crenshaw a second time in August 2007 and threatened to go to Human Resources about Crenshaw's failure to act on his complaints. (*Id.* at 124:9-24.) Shortly thereafter, Harrison was terminated. Crenshaw has denied that either conversation took place. (Crenshaw Dep. at 51:25—52:5.) Formosa argues that, even assuming Harrison did in fact complain to Crenshaw about the ageist comments and threaten to report Crenshaw to Human Resources, and assuming that

17

Harrison's complaints constitute "protected activity" under the ADEA, Harrison cannot establish a *prima facie* case of retaliation because he is unable to establish a causal link between his complaints to Crenshaw and his subsequent termination.

As with Harrison's discrimination claim, because Crenshaw was not the ultimate decisionmaker, Harrison's *prima facie* retaliation claim survives only if he is able to impute Crenshaw's alleged retaliatory motive to Smith, Wang, Drastata, and Chang through the cat's paw doctrine. *See Mato*, 267 F.3d at 450; *Long*, 88 F.3d at 307. However, Harrison cannot do this for the same reasons he could not do so with respect to his discrimination claim. *See* Part III.A.2.c, *supra.* Accordingly, the Court finds that Harrison has failed to establish a *prima facie* case of retaliation, and Formosa is entitled to summary judgment on this claim.

**C. Legitimate, Non-Discriminatory, Non-Retaliatory Reason for Discharge**

Even if Harrison were able to establish a *prima facie* case of age discrimination and/or retaliation, the Court would nevertheless conclude that Harrison failed to raise a genuine issue of material fact for trial because Harrison has failed to present any evidence from which a reasonable fact-finder could conclude that Formosa's legitimate, non-discriminatory explanation for its decision to terminate Harrison was false. Formosa posits and presents evidence supporting the contention that it terminated Harrison after he committed three disciplinary infractions within a 12-month period, the last one being his August 25, 2007 refusal to perform the loading assignment and subsequent departure without Crenshaw's permission. (Laas Decl. ¶ 7; Drastata Decl. ¶ 5.) Even without consideration of Harrison's prior disciplinary history, simply refusing to perform one's job duties is a legitimate non-discriminatory reason for termination. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167—68 (5th Cir. 1999). Because Formosa has articulated a non-discriminatory reason for terminating Harrison's employment, the

burden shifts to Harrison to demonstrate that the proffered reason was false, and merely a pretext for discrimination and/or retaliation.

Harrison complains that Formosa's proffered explanation for his termination is invalid because Crenshaw falsified the allegations regarding Harrison's insubordination in his written warning to Human Resources, and Harrison did not leave work the night of August 25 without permission. In cases such as this one, where an employee is discharged based on allegations of misconduct made by another employee, "the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'" *Jackson*, 602 F.3d at 379 (quoting *Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993)). Likewise, "the question is not whether [the employer] made an erroneous decision, but whether [its] decision was made with discriminatory motive." *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 907 (S.D. Tex. 2007). "Since motive is the issue, a dispute in the evidence concerning [whether or not an employee engaged in misconduct] does not provide a sufficient basis for a reasonable fact-finder to infer that the proffered justification is unworthy of credence." *See Id* (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).

Here, Formosa conducted an investigation into Crenshaw's allegation that Harrison refused a work assignment and left without permission, and it found little to no evidence supporting Harrison's version of events. (*See* Laas Decl. at ¶¶ 11—16; Drastata Dec. at ¶ 6.) As discussed at length in Part III.A.2.c *supra*, not one of Harrison's coworkers could corroborate Harrison's claim that Crenshaw told him to go home that night. Because Harrison has presented no evidence suggesting Formosa's decision to rely on the results of Laas' investigation was unreasonable or in bad faith, Harrison's "own conclusory assertion that he did not behave

inappropriately is irrelevant," and it "does not create a factual issue as to the falsity of [Formosa's] proffered reason for terminating him." *Jackson*, 602 F.3d at 379 (citations omitted).

Because Formosa has clearly articulated a legitimate, nonretaliatory reason for Harrison's termination, the burden shifts to Harrison to set forth competent summary judgment evidence demonstrating that Formosa's proffered reason is false, and "but for" his age or his complaints to Crenshaw concerning the ageist comments and threat to report Crenshaw to Human Resources, Harrison would not have been terminated. *See Jackson*, 602 F.3d at 377; *Medina*, 238 F.3d at 685. Harrison admitted that he did not believe he was terminated because of his age, and his only "evidence" of retaliation is that he was terminated only a couple of weeks after his second confrontation with Crenshaw. (*See* Harrison Dep. at 103:3—104.1.) The Fifth Circuit has "affirmatively reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 806 (5th Cir. 2007) (explaining that "[s]uch a rule would unnecessarily tie the hands of employers"). Because Harrison's retaliatory discharge claim is based solely on the temporal proximity between his complaint to Crenshaw and termination, Harrison cannot meet his burden of proof, and his retaliation claim must fail.

**IV. Conclusion**

For the aforementioned reasons, Formosa's Motion for Summary Judgment is **GRANTED**, and this case shall be **DISMISSED**.

It is so **ORDERED**.

**SIGNED** this 10th day of March, 2011.

                                                      JOHN D. RAINEY
                                        SENIOR U.S. DISTRICT JUDGE